OPINION
Defendant-appellant Segundo Diaz Rivera appeals from his conviction and sentence on two counts of Aggravated Robbery. Rivera contends that the trial court abused its discretion by denying his request to call two eyewitnesses to testify at the suppression hearing in which he claimed that an unduly suggestive photographic identification procedure was used, and that the trial court abused its discretion by denying his motion to compel discovery of police reports concerning other robberies that had been committed in the same general location.
We conclude that the trial court did not abuse its discretion when it denied Rivera's request to compel discovery of police reports concerning other robberies at the same general location. Even if Rivera had been able to offer proof that he did not commit the other robberies, this would have had no probative force unless the other robberies and the robberies charged against Rivera had been committed with a common, distinctive modus operandi. In our view, the trial court could have found, within its discretion, that these robberies were not committed with a sufficiently distinctive modus operandi to have probative force with respect to Rivera's innocence of the offenses with which he was charged.
We agree with Rivera that the trial court abused its discretion when it denied his request to call two eyewitnesses to testify at the suppression hearing in which he was contending that an unduly suggestive photographic identification procedure was used. The eyewitnesses would have been the best witnesses on that issue, and they would not have shared the bias of the police officer who testified at the suppression hearing, who presumably would have been interested in avoiding a finding that his police work was flawed. However, we conclude that the trial court's error in this regard is harmless, beyond reasonable doubt, in view of the testimony of these eyewitnesses at trial. They were examined extensively, both upon direct and cross-examination, concerning the eyewitness identification procedure, and their testimony would not have been at all helpful to Rivera in his attempt to establish that the procedure was unduly suggestive.
Because we find both of Rivera's assignments of error to be without merit, the judgment of the trial court is Affirmed.
 I
One night in July, 2000, some time after midnight, Mark Vonderbrink and Jordan Watkins parked in the parking lot of Flanagan's Pub, and were approached by two men, one of whom pulled a gun and demanded money.
Vonderbrink ran into the bar and ultimately summoned the police. Jordan had his wallet removed from his pocket by the accomplice of the man holding the gun. After the wallet was removed, the two robbers ran. Jordan ran after them, yelling, "just please drop my wallet." The robbers then removed the money from the wallet, dropped the wallet, and kept running.
Vonderbrink and Jordan picked Rivera out of a photographic array as the man with the gun. Rivera was arrested and charged with two counts of Aggravated Robbery.
Rivera moved to suppress the photographic identification, upon the grounds that it was obtained as the result of an unduly suggestive procedure. He sought, but was denied, permission to call Vonderbrink and Watkins to testify at the suppression hearing. The police officer who showed Vonderbrink and Watkins the photographs testified at the suppression hearing. Following the hearing, the motion to suppress was denied.
At a jury trial, Vonderbrink and Watkins both testified. Besides positively identifying Rivera as the robber, they each testified extensively, both upon direct and cross-examination, concerning their identification of Rivera from the photographic array.
At the trial, Kathryn McLavin, the sister of a woman Rivera was dating, testified that Rivera had admitted his participation in the robbery.
The jury returned a verdict of guilty on both counts, judgments of conviction were entered, and Rivera was sentenced accordingly. From his conviction and sentence, Rivera appeals.
 II
Rivera's First Assignment of Error is as follows:
 WHETHER THE TRIAL COURT ERRED BY NOT ALLOWING THE APPELLANT TO CALL THE COMPLAINING WITNESSES AT THE SUPPRESSION HEARING REGARDING THE ISSUE OF THE IDENTIFICATION PROCEDURES BEING UNDULY SUGGESTIVE AND UNRELIABLE.
Due process includes the right to call witnesses at a hearing. A trial court has discretion to limit the number of witnesses, but that discretion is not absolute.
In the case before us, the trial court was evidently under the misimpression that the eyewitnesses' testimony would only be relevant to the issue of whether their identification was otherwise reliable, in the event that the photographic identification procedure was found to be unduly suggestive. While it is true that the eyewitnesses could have testified on that issue, they were also competent to testify concerning the procedures used, and whether those procedures were unduly suggestive. Indeed, the eyewitnesses were the best witnesses on that issue, since only they could know, directly, what they saw and heard during the photographic identification procedure. Furthermore, the police officer who testified, Gary Engle, had a bias that would not be shared by the eyewitnesses. Engle had an obvious interest in establishing that the procedure he followed in conducting the photographic array was proper. The eyewitnesses, who were not responsible for the procedure, would have no similar bias.
We have no hesitancy in opining that the trial court abused its discretion when it denied Rivera's request to call the eyewitnesses to testify at the suppression hearing. However, we conclude that the trial court's error was harmless. Both eyewitnesses testified at the trial, and were extensively examined, both upon direct and cross-examination, concerning the photographic identification procedure.
It is apparent that Rivera hoped to establish, at the suppression hearing, that a photograph was exhibited to one or both eyewitnesses similar to the photograph he had received in discovery, in which the word "wanted," in large letters, appeared across the face of the photograph. Both eyewitnesses denied that there was anything like this, or otherwise suggestive, in the photographic array that was presented to them. Both eyewitnesses indicated that an array of smaller photographs was first presented to them. Watkins testified that he identified Rivera, positively, from this array. It was only after his identification of Rivera from this array that Watkins, according to his testimony, was shown an array of larger photographs. Rivera was "number five," in both arrays. Watkins denied that there was anything suggestive about Rivera's photograph in either array.
Vonderbrink testified that he tentatively picked Rivera's photograph from the smaller array, but could not be positive in his identification. Vonderbrink testified that when Engle asked if larger photographs might help, Vonderbrink responded in the affirmative, and the array of larger photographs was shown, from which Vonderbrink positively picked out Rivera's photograph. Like Watkins, Vonderbrink testified that there was nothing suggestive about any of the photographs in either array. He specifically testified that there was no writing on any of the photographs.
From their testimony at trial, it is clear that the testimony of Vonderbrink and Watkins, had they been permitted to testify at the suppression hearing, would not have been helpful to Rivera. Accordingly, we conclude that the trial court's error in having denied his request to call Vonderbrink and Watkins at the suppression hearing was harmless, beyond reasonable doubt.
Rivera's First Assignment of Error is overruled.
 III
Rivera's Second Assignment of Error is as follows:
 WHETHER THE TRIAL COURT ERRED IN DENYING APPELLANT'S MOTION TO COMPEL THE ONGOING ROUTINE OFFENSE REPORTS AND INCIDENT REPORTS THAT WERE IN THE POSSESSION OF THE POLICE AND MENTIONED IN THE POLICE REPORT THAT THE APPELLANT RECEIVED IN THE DISCOVERY FROM THE PROSECUTOR.
Where uncharged offenses and charged offenses are committed with a common, distinctive modus operandi, evidence that the defendant did, or did not, commit the uncharged offenses is admissible as being probative of the defendant's guilt or innocence. More often, this issue arises when the State is attempting to prove that the defendant committed the uncharged offenses, and that the modus operandi they share with the charged offenses is sufficiently distinctive to constitute a "behavioral fingerprint," giving rise to an inference that the same perpetrator committed both the charged and the uncharged offenses, thereby tending to prove that the defendant committed the charged offenses. See, for example, State v. Lowe (1994), 69 Ohio St.3d 527.
We recognize, however, that comparable evidence may be probative of a defendant's innocence of charged offenses, in the converse situation; that is, uncharged offenses and charged offenses share a distinctive modus operandi, and the defendant offers proof that he was not the perpetrator of the uncharged offenses. This proof will give rise to a reasonable inference that there is a common perpetrator of both the charged and uncharged offenses, and that this perpetrator is not the defendant. See 22 ALR 5th 1, "Third-Party Similar Crimes." However, this inference will only be reasonable if the offenses are committed with a distinctive modus operandi. See, State v. Thornton (April 1, 1999), Cuyahoga App. No. 73232, unreported. "Very seldom is evidence of different crimes sufficiently similar to be a behavioral fingerprint." State v. Echols (1998), 128 Ohio App.3d 677, at 693.
Thus, for example, proof that a perpetrator other than Rivera committed robberies in the same general vicinity by means of a firearm would not give rise to a reasonable inference that Rivera was not the perpetrator of the charged offenses, since there is nothing unusual or distinctive about using a firearm to commit a robbery. Rivera argues that the distinctive modus operandi linking the robberies in the police reports with the charged offenses is the fact that they occurred in the same general vicinity, that a man's wallet was taken, money was taken out, and the wallet was then given back to the victim. We would find this argument more persuasive if the common modus operandi had involved a volunteered return of the wallet; that is, a return of the wallet absent any request that it be returned. That is not what occurred in this case. Watkins testified that it was only after he ran after the robbers and yelled, "just please drop my wallet," that the money was taken from the wallet, and the wallet was dropped to the ground. Because a wallet taken in a robbery would ordinarily have no further use to the perpetrator, and, indeed, could subsequently link the perpetrator to the crime, we find nothing unusual or distinctive about a robber's returning a wallet upon request, after removing the money. In our view, it was within the trial court's discretion to determine that, even if Rivera had been able to offer evidence that he was not the perpetrator of the other, uncharged offenses, they did not share a sufficiently distinctive modus operandi with the charged offenses to support a reasonable inference that all of the offenses, charged and uncharged, had a common perpetrator. Consequently, there was no reasonable likelihood that the police reports would lead to evidence probative of Rivera's innocence, and the trial court did not abuse its discretion in denying his motion to compel discovery of these police reports.
Rivera's Second Assignment of Error is overruled.
 IV
Both of Rivera's assignments of error having been overruled, the judgment of the trial court is Affirmed.
BROGAN and GRADY, J. J., concur.